## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ARTREZE JONES**, | |
| Plaintiff, | |
| v. | Case No. 1:22-cv-1513 (TNM) |
| **UNITED STATES DEPARTMENT OF DEFENSE**, | |
| Defendant. | |

## <u>MEMORANDUM OPINION</u>*

The Army found that an injured servicemember did not qualify for disability benefits. Years later, he appealed that decision to the Army. But the Army did not budge. So the soldier sued the Army's parent agency—the Defense Department—alleging that its decision not to change his initial disability determination violated the Administrative Procedure Act. Both sides now move for summary judgment. Because the Department's decision was not arbitrary or capricious and followed binding law, the Court will grant it summary judgment.

### I.

Artreze Jones served honorably in the Army as a Heavy Construction Equipment Operator. *See* Administrative Record (AR) 1207, ECF No. 22. He performed well, receiving various medals and ribbons. *See id.* But meanwhile, his life outside the Army was crumbling.

Less than two years in, his mother passed away, the fourth death in his family since he had enlisted. *See* AR389. And to make matters worse, his girlfriend left him. *See id.*

---

\* The Memorandum Opinion was issued under seal on May 19, 2023. This version contains redactions of confidential information.

Distraught, ███████████████. *See* AR388. ████████████████. *See id.*
██████████████████████████████████. *See* AR38. Jones spent
nearly three weeks at his first hospital, followed by a six-week stint in a "██████
█████████████" *Id.* He was left with "████████████████████" in his "███████
██████████████████████████████████ AR13.
After leaving the hospital, Jones began the Army's long disability-review process.

**A.**

First, an overview of that process. With an injured soldier like Jones, the Army needs to
figure out two related things: if the soldier is unfit to serve, and, if so, whether he qualifies for
disability retirement. The Army does that in a few steps.

The process begins with a Medical Evaluation Board review. If that board determines
that a soldier is unfit to serve, it refers the soldier to the Physical Evaluation Board. *See Pillette
v. United States*, 675 F. App'x 1006, 1010 (Fed. Cir. 2017). The Evaluation Board then
"conducts a more thorough investigation" to determine "whether the servicemember is fit for
duty and qualifies for disability retirement." *Fulbright v. McHugh*, 67 F. Supp. 3d 81, 85–86
(D.D.C. 2014). And it rates the soldier's disabilities on a percent scale.

These ratings carry significant financial implications. A soldier who served for less than
20 years must have at least a 30% disability rating to qualify for disability retirement, a series of
lifetime payments. *See* 10 U.S.C. § 1201(b)(3). If the soldier falls below that 30% threshold, he
receives only severance pay. *See* 10 U.S.C. § 1203(a).

Some soldiers are eligible to have that rating reviewed by yet another board—the Army's
Physical Disability Board of Review. The Review Board examines the Evaluation Board's
"findings and decisions." 10 U.S.C. § 1054a(c). And, as part of its process, the Review Board

must also consider any other ratings assigned by Veterans Affairs, which also assesses disabilities. *White v. Mattis*, No. 18-cv-02867, 2019 WL 6728448, at *2 (D.D.C. Dec. 11, 2019). Ultimately, the Review Board can recommend that the Army change the soldier's disability rating.

**B.**

Jones began Medical Board review in 2002. *See* AR1217. For over two years, he saw many physicians and underwent various tests. The Medical Board eventually diagnosed him ████████████████████ and referred him to the Evaluation Board. *See* AR16. Only two conditions are relevant here: (1) ██████████████████████████. Only the first was recognized by the Medical Board referral. *See id.*

In 2004, the Evaluation Board found that only Jones's ████████████████ ████████████ *See* AR13. It described that condition as a ████████████████ ████████████████████████████████████████████████████ ████████ *See id.* In conclusion, the Evaluation Board recommended that Jones be discharged with severance pay. *See* AR14. And the Army discharged him a few months later. *See* AR1029.

After that, Jones applied for disability through the VA. Upon reviewing his medical records, the VA gave Jones a ████████████████████████████████████ ████████████████ *See* AR5.

And finally, Jones applied to the Review Board, asking it to change the 20% rating from the Evaluation Board. *See* AR10. In his view, the Evaluation Board had unreasonably ████████████████████████████████. *See id.* And under the Evaluation Board's

rating, he did not qualify for Army disability retirement. *See* 10 U.S.C. § 1201(b)(3). But under the VA's rating, he would. *See id.*

The Review Board considered Jones's Army medical records, his VA records, and the Army and VA disability ratings. *See* AR9. In a six-page memorandum, it chronicled Jones's medical history and compared the dueling disability ratings. Plus, the Review Board sent Jones's medical records to a neurology consultant. ████████████████████████████

████████████████████████████████████████

██████████████████████████████ AR8. In the end, the Review Board agreed with the Evaluation Board's ratings and recommended "no re-characterization of [Jones's] disability and separation determination" to the Secretary. *Id.*

Displeased with the Review Board's recommendation, Jones sued. He says that the Review Board's decision was "arbitrary, capricious, unsupported by substantial evidence and contrary to law." Am. Compl. at 15, ECF No. 8. Now, both parties have filed motions for summary judgment. *See* Pl.'s Mot. for Summ. J. (Jones MSJ), ECF No. 24; Def.'s Cross-Mot. for Summ. J. (DoD MSJ), ECF No. 26-1. The Court has jurisdiction. *See* 28 U.S.C. § 1331.

## II.

Normally, summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). But when reviewing a challenge to an administrative decision, the Court instead reviews that decision under the APA. *Sierra Club v. Mainella*, 459 F. Supp. 2d 76, 89–90 (D.D.C. 2006). Thus, "the district judge sits as an appellate tribunal" and the "entire case on review is a question of law." *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001) (cleaned up). The Court must "hold unlawful

and set aside" a decision that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).

The parties dispute how much deference the Court should grant to Review Board decisions.  The Department says it should be heightened.  Jones says it should be normal.

Courts more deferentially review decisions from some military boards.  *See, e.g.*, *Cone v. Caldera*, 223 F.3d 789, 793 (D.C. Cir. 2000) (Army Board for Correction of Military Records); *Kreis v. Sec'y of the Air Force*, 866 F.2d 1508, 1514 (D.C. Cir. 1989) (Air Force Board for Correction of Military Records).  And the Court finds that Review Board decisions merit heightened deference too.

To figure out whether to give heightened deference, courts look to "the extent to which the relevant statute . . . constrains agency action."  *Kreis*, 866 F.2d at 1514.  Here, the relevant statute is 10 U.S.C. § 1554a.  Under § 1554a(d), the Review Board "*may*, as a result of its findings under a review under subsection (c), recommend to the Secretary concerned the following [outcomes]."  (emphasis added).  And under 1554a(d)(1), "[t]he Secretary concerned *may* correct the military records . . . in accordance with a recommendation made by the [Review Board]."  (emphasis added).  The Review Board does not have to recommend a change to the veteran's disability rating because of the provision's use of the word "may," which suggests that it retains discretion not to.  *See Jama v. ICE*, 543 U.S. 335, 346 (2005) ("The word 'may' customarily connotes discretion."); Antonin Scalia & Brian A. Garner, Reading Law: The Interpretation of Legal Texts 112 (2012) ("[M]ay is permissive," and "permissive words grant discretion.").  And for the same reason, the Secretary need not follow the Review Board's recommendation.  Thus, the scheme is doubly deferential:  The Review Board need not

recommend anything, and the Secretary can ignore any recommendation and choose to make no changes.

This scheme thus appears even more discretionary than the one at issue in *Cone* and *Kreis*, both of which warranted heightened deference. The statute in those cases, 10 U.S.C. § 1552(a)(1), allowed the Secretary of a military department to change a record "when the Secretary considers it necessary to correct an error or remove an injustice." In contrast, the statute here does not constrain the Review Board to fixing only errors or injustices. And it is coupled with a provision granting sizeable discretion to the Secretary. Because of this, the scheme here presents an even stronger case for deference. *But see U-Ahk-Vroman-Sanchez v. DOD*, No. 19-cv-3141, 2021 WL 394811, at *6 (D.D.C. Feb. 4, 2021) (finding no heightened deference). Thus, the Court agrees with the Department that it deserves heightened deference.

### III.

The Department says that it is entitled to summary judgment because the Review Board's decision was not arbitrary and capricious, unsupported by substantial evidence, or contrary to law. DoD MSJ at 1, 21. Jones disagrees. The Court takes each in turn.

### A.

The Department argues that the Review Board's decision was reasoned and supported by substantial evidence. That is correct.

### 1.

To engage in reasoned decisionmaking, the Review Board must have "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Ins. Co.*, 463 U.S. 29, 43 (1983) (cleaned up). The Court's review is

6

"narrow," and thus it may not "substitute its judgment for that of the agency." *Id.* Still, the Court must set aside an agency decision that relies on irrelevant considerations or ignores important ones. *See id.* And an agency's conclusions must be plausible. *See id.*

██████████████████████████████ Like the VA, the Review Board uses the Veteran Affairs Schedule for Rating Disabilities to determine disability ratings. *See* 10 U.S.C. § 1216a(a)(1)(A). Under the VA Schedule, ████ conditions like Jones's are rated either "severe," "moderate," or "mild." *See* 38 C.F.R. § 4.124a. And each of those ratings has a corresponding disability percentage: 70, 40, or 20. *See id.*

Jones's Review Board faced competing ratings. The Army's Evaluation Board had rated ███████████████████████████████ AR5. After reviewing the evidence, the Review Board sided with the Evaluation Board, ███████████████████████████ AR9.

The Review Board explained that Jones had ████████████████████████ ███████████████████████████████ AR8. And it noted that Jones ████ ████████████████████████████████████ ███████████████████████████ *Id.*

The Review Board also explained why it found the VA rating less compelling: "[T]he VA rater cited findings in the record in the 2003 timeframe in determining the 40% rating. . . . [T]he 2003 findings did not reflect his condition" when he was discharged. *Id.* In other words, because Jones had improved, those old medical records were less probative of his condition at the time that counts for disability ratings—when he was discharged in 2004. The Review Board also acknowledged contrary evidence while explaining why that evidence did not disturb its overall conclusion. *See id.* ████████████████████████████████

██████████████████████████████████████████████████████████

████████████████

    In short, the Review Board "examine[d] the relevant data and articulate[d] a satisfactory explanation for its" arm rating. *State Farm*, 463 U.S. at 43.  It made "no clear error of judgment." *Id.* (cleaned up).

██████████████████████████████████████████████████

████████████████████████ from the Evaluation Board, and the Review Board recommended no change.  *See* AR9.  In reaching that conclusion, the Review Board chronicled the relevant evidence. ████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████ *cf. Fred Meyer Stores, Inc. v. NLRB*, 865 F.3d 630, 638 (D.C. Cir. 2017) (remanding a decision for "a complete failure to . . . grapple with contrary evidence"). ██████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████ AR8.  And the Review Board explained that ████████████████████████████████████████████████████

██████████████████████████████████ AR8–9.  So this decision was sound too.

**2.**

    Jones urges that the Review Board's decision was unreasoned and not supported by substantial evidence.  And he levies many arguments in support.  Yet none persuade.

    First, a preliminary issue.  Underlying many of Jones's arguments is a common point: the Review Board erred by failing to apply a section from the VA's internal manual, M21-1

Adjudication Procedures, ████████████████████████  *See* Jones MSJ at 16; *see also*

U.S. Dep't of Veterans Affs., M21-1 Adjudication Procedures.  In Jones's view, the Review

Board's failure to do so infected its decision with many problems.  *See* Jones MSJ at 13.

Jones's argument runs as follows:  By statute, the Review Board must use the VA

Schedule, "including any applicable interpretation of the schedule by the United States

Court of Appeals for Veterans Claims."  *See* Pl.'s Reply and Opp'n (Jones Reply) at 13, ECF

No. 30-2 (quoting 10 U.S.C. § 1216a(a)(1)(A)).  And he cites two cases from the Court of

Appeals for Veterans Claims for the rule that "evaluators of veteran disability ratings must

consider and discuss . . . [the Manual]."  *Id.* at 12–13.

But neither case holds that.  *Overton v. Wilkie*, 30 Vet. App. 257, 264 (2018), held that

the *Board of Veterans' Appeals* must consider the Manual.  *Healey v. McDonough*, 33 Vet. App.

312, 321 (2021), held likewise for a different VA internal guidance document.  As *Healey*

explained, its holding fit "with a longstanding practice of requiring an agency to follow *its own*

internal guidance and policies."  *Id.* (emphasis added).  Both cases involved the Board of

Veterans' Appeals, not the Army's Review Board.  And more critically, neither case was an

"applicable interpretation of the [VA Schedule]."  10 U.S.C. § 1216a(a)(1)(A).  Instead, both

cases involved the VA's obligation to consider *other* guidance documents.  And because neither

case was interpreting the VA Schedule, neither case bound the Review Board.  So the Review

Board need not have considered the Manual.

The Court now takes Jones's specific objections in turn.

*Fact disputes*.  Jones claims that the Review Board got some facts wrong.  First, he says

that the Review Board was wrong in finding that "the VA rating was based only on medical

records from 2003."  Jones MSJ at 14.  Not so.  The Review Board never said that the VA

considered only 2003 evidence.  Rather, it stated that ███████████████████████████

███████████████████████████████████ AR8.  That is (1) true and (2) different from

what Jones claims it says.  *See* AR1033 (VA rating decision citing evidence from 2003).  So this

raises no problem.

████████████████████████████████████████████████

████████████████████████████████.  *See* Jones MSJ at 14–15.  But the Review

Board did note that some symptoms had persisted.  *See* AR8 (noting that Jones ███████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████ Thus, the

Review Board "reasonably reflect[ed] upon [record evidence] and grapple[d] with contrary

evidence."  *Fred Meyer Stores*, 865 F.3d at 638.

   *Rational connection*.  Jones also claims that the Review Board "failed to explain how

[the] evidence fit into" its recommendation.  Jones MSJ at 16.  In his view, it needed to "set forth

a standard for comparing and assessing terms of degree."  *Id.*  In particular, it needed to apply the

Manual.  The Court disagrees.  Recall that the Review Board was not bound by the Manual.  And

the VA Schedule left the rating options loosely defined, giving the Review Board three choices:

severe, moderate, or mild.  It chose mild.  And, based on each term's common meaning, that

choice was reasonable.

   *Irrelevant considerations*.  Next, Jones protests that the Board relied on irrelevant

considerations.  First, the Review Board wrongly considered ████████████████████████

████████████████████████.  Jones MSJ at 18.  That was wrong, he says, for two reasons:

████████████████████████████████████████████████

10

██████████████████████████ *Id.* at 19 (quoting DoD Instruction 6040.44, Encl. 3 § 1(b) (DoDI 6040.44), *Physical Disability Board of Review*, July 2, 2015).

But neither argument helps him.  Knowing the correct cause of Jones's symptoms could have helped the Review Board assess his condition's severity.  So it was potentially probative and thus a valid consideration.  Nor did the Review Board violate Army regulations.  In Jones's view, those "explicitly limit[] the [Review Board's] review to identified conditions."  Jones MSJ at 19 (internal quotation marks omitted).  True enough.  But that is exactly what the Review Board did: it reviewed his identified condition.  And Jones points to nothing that says the Review Board cannot consider the accuracy of a diagnosis when doing so.

Second, Jones argues the Review Board should have ignored that his condition had improved over time.  He claims that improvement is "wholly irrelevant to [the Review Board's] rating criteria," which is "based on the veteran's condition at the time of separation."  Jones MSJ at 20.  But improvement was relevant; it suggested that medical reports from closer to the time of his discharge were more probative.  *See, e.g.*, AR8 (Jones █████████████████ ████████████████████████████████████████████████████ ████████████████████████

Third, Jones insists that the Review Board should have ignored whether █████████████ ████████████████  *See* Jones MSJ at 20–21.  But why?  He says that "nothing in the [VA Schedule] *requires*" the Review Board to consider such things.  *Id.* at 21 (emphasis added).  But neither does the VA Schedule foreclose it.  Indeed, it would have been odd for the Review Board to disregard that evidence.

Jones also argues that if this was an appropriate consideration, then the Review Board weighed it improperly because ████████████████████████████████████████████



*See id.*  Not so.  Jones points to nothing that foreclosed the Review Board from considering, among other things, ███████████████████████.  Indeed, that is rationally connected to the Review Board's finding that Jones's condition was mild.

Fourth, Jones nitpicks the following statement from the Review Board: ████████████ ███████████████████████████████████████████████ Jones MSJ at 21 (quoting AR8) (alterations in original).  ████████████████████████ ██████████████████████████████ But nothing prohibits the Review Board from placing medical records in context.  Its decision need not "be a model of analytic precision to survive a challenge."  *Dickson v. Sec'y of Def.*, 68 F.3d 1396, 1404 (D.C. Cir. 1995).

*Substantial evidence.*  Jones also claims that the Review Board's decision was not supported by substantial evidence.  He faults the Review Board for failing to apply the Manual, which it need not have considered.  And he alleges that the Review Board ignored contradictory evidence, particularly a ████████████████████████████ ████ Jones MSJ at 24. ████████████████████████ ████████████████████████████ █████████████ AR8.

## C.

Jones also claims that the Review Board's decision must be overturned because it was "not in accordance with law."  *See* Jones MSJ at 26 (quoting 5 U.S.C. § 706(2)(A)).  But the

Review Board complied with its obligations under 10 U.S.C. § 1554a and DoDI 6040.44.  And

Jones points to no binding law that it violated.

Jones first claims that the Review Board disregarded an Army guidance document.  DoDI

6040.44 directs the Review Board to:

> (a) Compare any VA disability rating for the specifically military-unfitting condition(s) with the PEB combined disability rating; and
> (b) Consider any variance in its deliberations and any impact on the final PEB combined disability rating, *particularly* if the VA rating was awarded within 12 months of the former Service member's separation.

Enclosure 3 § 4(a)(5) (emphasis added).  Under Jones's reading, the Review Board needed to

give "particular consideration to the 2006 VA decision."  Jones MSJ at 27.  By this, Jones seems

to argue that the Review Board needed to give the VA decision some type of deference.  But that

is not what the provision says.  Under that section, the Review Board needed to particularly

consider "any variance" in deliberations between the VA and Army disability reviews.  The

Review Board did so, noting that the VA had relied more on outdated examinations from 2003.

Thus, the Review Board followed this instruction.

Next, Jones says the Review Board flouted regulations.  Both 38 C.F.R. § 3.102 and 38

C.F.R. § 3 require that reasonable doubt about a disability "be resolved in [the veteran's] favor."

And 38 C.F.R. § 4.7 requires the Review Board to recommend the higher disability score "if the

disability picture more nearly approximates the criteria required for that [higher] rating."  But

this argument is little more than a rehash of Jones's others.  ████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████

████████  His argument goes like this:  DoDI 1332.38 lists various criteria that the Review

Board may consider, including whether a condition poses a risk to other servicemembers and

whether a condition makes keeping the servicemember too burdensome.  *See* E3.P3.2.2.  Plus,

the Instruction says that the Review Board must consider "[a]ll relevant evidence."  DoDI

1332.38, E3.P3.3.  He says the Review Board failed to consider all relevant evidence when it did

not specifically mention part of a 2003 exam, ████████████████████████████

████████████████████████████████████████ AR1231.

Not so.  The Review Board noted the exam that Jones highlights.  *See* AR8 ("[T]he

[Medical Board] psychiatrist noted that [Jones] was at risk of recurrence . . . [and] argued that he

did not meet retention standards.").  ███████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████ *See* AR9.  So even if the

Review Board were bound by those instructions, which the Department disputes, the Review

Board satisfied them.

IV.

For these reasons, the Court will grant summary judgment for the Department and deny

Jones's motion for summary judgment.  The Review Board's decision was reasoned, supported

by substantial evidence, and followed the law.  Its conclusion was reasonable under any standard

of review, but particularly given the heightened deference its decisions warrant.

A separate, unredacted Order has issued.

Dated: June 7, 2023                                          _____

                                                            TREVOR N. McFADDEN, U.S.D.J.